IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| KALIN GUTHRIDGE,<br><br>Plaintiff,<br><br>vs.<br><br>JOHNSON & JOHNSON CORP. and ETHICON, INC.,<br><br>Defendants. | CV 22-145-BLG-SPW-TJC<br><br>**FINDINGS AND RECOMMENDATIONS OF U.S. MAGISTRATE JUDGE** |

Plaintiff Kalin Guthridge ("Guthridge") brings this products liability action against Defendants Johnson & Johnson Corp. and Ethicon, Inc. (collectively "Defendants"), alleging claims for injuries she sustained from implantation of a medical device. (Doc. 21.)

Presently before the Court is Defendants' Motion to Dismiss. (Doc. 22.) The motion is fully briefed and ripe for the Court's review. (Docs. 23, 24, 27.) For the following reasons, the Court recommends that Defendants' motion be **GRANTED**, without prejudice and with leave to amend.

I.  **Background**[1]

On November 30, 2011, Guthridge had a retropubic mid-urethral sling, known as a TVT Obturator ("TVT-O"), implanted for treatment of stress urinary

---

[1] The following facts are taken from Guthridge's First Amended Complaint ("FAC"). (Doc. 21.)

1

incontinence. TVT-O is a medical device manufactured and sold by Johnson & Johnson and its subsidiary Ethicon.

Following surgery in 2011, Guthridge experienced minor urinary retention. In 2021, however, the urinary retention worsened. Guthridge also began to experience hematuria and dysuria, and required use of a catheter. A urodynamics evaluation that followed revealed evidence of obstruction due to the TVT-O. Then, in August 2021, Guthridge's medical provider observed exposed mesh in her urethra. Based on these findings and her symptoms, it was recommended that the TVT-O be removed, and in October 2021, Guthridge underwent a mesh removal surgery. A catheter was required for three weeks post-surgery. Guthridge continues to experience urinary incontinence and pain; her treatment is ongoing.

Based on the foregoing, Guthridge pleads four causes of action: strict liability – design defect (Count I); strict liability – failure to warn (Count II); violations of the Montana Consumer Protection Act (Count III); and misrepresentation (Count IV). (*See* Doc. 21.)

Defendants move to dismiss Count III under Fed. R. Civ. P. 12(b)(6) for failure to state a claim, and Counts III and IV under Fed. R. Civ. P. 9(b) for failure to state claims of fraud with particularity. (*See* Doc. 22.)

/ / /

/ / /

## II.     Fed. R. Civ. P. 12(b)(6)

### A.     Legal Standard

Federal Rule of Civil Procedure 12(b)(6) governs a motion to dismiss for failure to state a claim upon which relief can be granted. A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "Dismissal under Rule 12(b)(6) is proper only when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Zixiang Li v. Kerry*, 710 F.3d 995, 999 (9th Cir. 2013) (citing *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008)). The Court's standard of review under Rule 12(b)(6) is informed by Rule 8(a)(2), which requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting Fed. R. Civ. P. 8(a)).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. A plausibility determination is context specific, and courts must draw on judicial experience and common sense in

3

evaluating a complaint. *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014). "[I]n practice, a complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

A court considering a Rule 12(b)(6) motion must accept as true the allegations of the complaint and must construe those allegations in the light most favorable to the nonmoving party. *See, e.g.*, *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998). But "bare assertions . . . amount[ing] to nothing more than a 'formulaic recitation of the elements' . . . for the purposes of ruling on a motion to dismiss, are not entitled to an assumption of truth." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Twombly*, 550 U.S. at 555). Such assertions do nothing more than state a legal conclusion, even if the conclusion is cast in the form of a factual allegation. *Id*.

### B. Standing under the Montana Consumer Protection Act

Defendants first argue Guthridge's Montana Consumer Protection Act ("MCPA") claim in Count III should be dismissed under Rule 12(b)(6) because she has failed to allege facts to support standing to bring the claim.

The MCPA prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Mont. Code Ann. § 30-

14-103 (2021). "[A]n unfair act or practice is one which offends established public policy and which is either immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Rohrer v. Knudson*, 203 P.3d 759, 764 (Mont. 2009).

To bring a private cause of action under the MCPA, a plaintiff must show three elements: (1) the defendant used or employed an unfair or deceptive act or practice in the conduct of any trade or commerce; (2) the claimant was a consumer, as defined by the Act; and (3) as a result, the claimant suffered a direct or indirect financial detriment. *Kostelecky v. Peas in a Pod, LLC*, 518 P.3d 840, 861 (Mont. 2022).

Defendants argue that the FAC is insufficient to state a MCPA claim because: (1) with respect to the second element, Guthridge is not a consumer, as defined by the MCPA; and (2) with respect to the third element, Guthridge alleges only personal injuries, not monetary or property loss. (Doc. 23 at 3–4.)

First, Defendants argue that Guthridge is not a "consumer" under the MCPA because she did not purchase the TVT-O, but was instead a "beneficiary of her hospital's purchase of the prescription medical device." (Doc. 23 at 4.) The MCPA defines "consumer" as "a person who purchases or leases goods, services, real property, or information primarily for personal, family, or household purposes." Mont. Code Ann. § 30-14-102(1). To support this element, Guthridge

5

alleges that Defendants "were compensated by Plaintiff or by others on her behalf," and that Defendants "retained the money paid for the defective products by Plaintiff or by others on her behalf." (Doc. 21 ¶¶ 44, 46.)

Defendants argue, however, that Guthridge "makes clear that she did not pay for the TVT-O" because she also alleges Defendants accepted payment "for the devices implanted into Plaintiff by others on her behalf." (Docs. 21 ¶ 43; 27 at 2–3.) But the FAC explicitly alleges that the TVT-O was paid for "*by Plaintiff* or by others on her behalf." (Doc. 21 ¶ 44 (emphasis added).) Taking Guthridge's allegation as true, she is a consumer as defined by the MCPA; she purchased the TVT-O for personal purposes.[2]

Second, Defendants argue that Guthridge fails to allege that she suffered a financial detriment. (Doc. 23 at 3–4.) The damages provisions of the MCPA are inherently remedial, and meant to "deter inappropriate action against consumers." *Jacobson v. Bayview Loan Servicing, LLC*, 371 P.3d 397, 413 (Mont. 2016). Under the Act, a consumer may sue "if he or she has suffered 'any ascertainable loss of money or property' as the result of an unfair practice." *Puryer v. HSBC Bank, USA, N.A.*, 419 P.3d 105, 114 (Mont. 2018) (quoting Mont. Code Ann. § 30-

---

[2] While the FAC alleges alternatively that the TVT-O was paid for by Plaintiff or others on her behalf, Fed. R. Civ. P. 8(d)(2) allows a party to "set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones." If a party alleges alternative theories, "the pleading is sufficient if any one of them is sufficient."

14-133)). *See also Anderson v. ReconTrust Co.*, 407 P.3d 692, 700 (Mont. 2017) (stating that an MCPA claim "requires proof that the alleged unfair or deceptive trade act or practice caused the complaining consumer to suffer an 'ascertainable' financial or property 'loss'"). "'[A]scertainable loss' includes any proven form of direct or indirect financial detriment or detrimental financial impact." *Kostelecky*, 518 P.3d at 861.

In this case, Defendants argue that Guthridge alleges only personal injury and did not allege a loss of money or property. (Doc. 23 at 3–4.) In addition to mental and physical injury, however, Guthridge's FAC alleges Defendants "were compensated by Plaintiff" for the TVT-O. (Doc. 21 ¶¶ 44, 46.) She further states that she underwent a mesh removal surgery in 2021, and that she "suffered financial or economic loss, including but not limited to, obligations for medical services and expenses, lost income, and other damages" as a result. (*Id.* ¶¶ 18, 66.) Defendants point to no authority which suggests that medical costs or lost income due to a physical injury or medical procedure do not constitute an ascertainable loss under the MCPA. Damages under the MCPA are to be broadly construed. *See, e.g.*, *Puryer*, 419 P.3d at 115 (stating a showing of "actual damages" is not required, and recognizing that cost and fees, attorney fees, and executing a legal proceeding to stop an improper foreclosure, were sufficient to state a MCPA

claim). Thus, contrary to Defendants' argument, Guthridge has pled an ascertainable loss as required for standing.

Therefore, the Court finds Guthridge has pled sufficient facts to show that she is a consumer under the MCPA, and she sustained an ascertainable loss. Count III should not be dismissed for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

## III. Fed. R. Civ. P. 9(b)

Defendants further argue that Guthridge's MCPA claim (Count III) and misrepresentation claim (Count IV) must be dismissed for failure to meet the heightened pleading standard of particularly required for fraud-based claims. (Doc. 23 at 4.)

### A. Legal Standard

Claims sounding in fraud or mistake are subject to the heightened pleading standard of Fed. R. Civ. P. 9(b). When fraud is alleged, Rule 9(b) requires that a party state "with particularity the circumstances constituting fraud." The rule "demands that the circumstances constituting the alleged fraud 'be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong.'" *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (quoting *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)). Application of Rule 9(b) is not

8

dependent on whether fraud is an essential element of the claim asserted. If the claim is "grounded in fraud' or "sound[s] in fraud," the particularity requirement of Rule 9(b) must be met. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103–04 (9th Cir. 2003).

To satisfy the requirements of Rule 9(b), a plaintiff who claims fraud must state the "who, what, when, where, and how of the misconduct charged." *Becerra v. Dr Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1228 (9th Cir. 2019); *Vess*, 317 F.3d at 1106. "[A] plaintiff must set forth *more* than the neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about a statement, and why it is false." *Vess*, 317 F.3d at 1106.

The particularity requirement under Rule 9(b) is governed by federal law. *Id*. at 1103. But a federal court "will examine state law to determine whether the elements of fraud have been pled sufficiently to state a cause of action . . . ." *Id*.

B.   **Misrepresentation Claim (Count IV)**

Guthridge's misrepresentation claim is premised on the allegation that Defendants "misrepresented the safety of the TVT-O for its intended use." (Doc. 21 ¶ 88.) The FAC alleges, for example, that "[d]espite their knowledge of problems and defects with its products, Defendants continued to represent TVT-O as being safe"; "Defendants fraudulently and affirmatively concealed the defective nature of TVT-O from Plaintiffs"; and, "[a]t all material times, Defendants

willfully, intentionally, and maliciously misrepresented and concealed facts from Plaintiff and her physician with the intent to defraud them." (Doc. 21 ¶¶ 90, 96, 97.)  These allegations are plainly "grounded in fraud" or "sound in fraud."  Thus, the heightened pleading standard of Fed. R. Civ. P. 9(b) applies.

Under Montana law, a prima facie case of actual fraud requires a plaintiff to establish:

> (1) a representation; (2) the falsity of that representation; (3) the materiality of the representation; (4) the speaker's knowledge of the representation's falsity or ignorance of its truth; (5) the speaker's intent that the representation should be acted upon by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of the representation's falsity; (7) the hearer's reliance on the truth of the representation; (8) the hearer's right to rely on the representation; and (9) the hearer's consequent and proximate injury or damages caused by reliance on the representation.

*Morrow v. Bank of Am., N.A.*, 324 P.3d 1167, 1182 (Mont. 2014).

Guthridge alleges that false representations were made by Defendants' representatives.  Guthridge alleges, for example, that "Defendants' own representatives have admitted that Defendants chose to conceal" facts related to the safety of the TVT-O, and that complications could leave to removal "because it would be bad for business."  (Doc. 21 ¶ 55.)  Guthridge also provides quotes from, and points to actions by, Ethicon's former marketing director, Ethicon's president, a medical professional, and Defendants' medical director that allegedly show that

Defendants did not include complete information in marketing the TVT-O until 2015, misleading providers and patients. (*See id.* ¶¶ 56–59.) Guthridge claims, for example, that Ethicon's former marketing director wrote that if Defendants were to publish information about the potential need for TVT-O removal, Defendants would "start giving reason to believe that explant of [the TVT-O] may be needed in some circumstances." (*Id.* ¶ 56.) These allegations are sufficient to satisfy the elements that representations were made, the alleged falsity of the representations, and Defendants' knowledge of their falsity.

Nevertheless, the FAC is lacking any factual allegations that Guthridge, or anyone connected to her care, heard any of the alleged representations; that anyone relevant to this case relied on the representations; or that Guthridge suffered any damages as a result of any reliance on the representations. Without facts supporting the inference that the alleged representations caused detrimental reliance, the FAC falls short of Rule 9(b)'s heightened pleading standard. The Court, therefore, recommends that Count IV be dismissed.

    C.    **MCPA Claim (Count III)**

Guthridge's MCPA claim incorporates all of the material facts set forth in the FAC and is, therefore, based on the same allegations of misrepresentation and fraud alleged in her misrepresentation claim. In similar circumstances, this Court has held that Rule 9(b) applies to a MCPA claim predicated on alleged fraudulent

11

conduct. *PNC Bank, Nat'l Ass'n v. Wilson*, 2015 WL 3887602, at *7 (D. Mont. June 23, 2015). But the Court also determined in *PNC Bank* that the MCPA claim did not require that a plaintiff plead and prove all of the elements of fraud, including detrimental reliance. *Id.* The Court found it was only necessary to identify plausible unfair or deceptive acts committed by the bank. *Id.*

After the *PNC Bank* decision, however, the Montana Supreme Court considered the essential elements of a MCPA claim in *Anderson v. ReconTrust Co., N.A.*, 407 P.3d 692 (Mont. 2017). In *Anderson*, the plaintiffs were experiencing difficulty with their mortgage and contacted Bank of America to inquire about a loan modification. Bank of America initially informed the plaintiffs that they preliminarily qualified for a loan modification, but final approval of the loan was ultimately denied. Without the loan modification, the plaintiffs were unable to cure the default on their mortgage, and their home was subject to a trustee's foreclosure sale. The plaintiffs subsequently brought suit against Bank of America and others, alleging various causes of action, including violations of the MCPA. The district court dismissed the complaint under Mont. R. Civ. P. 12(b)(6), finding the complaint failed to state sufficient facts to entitle them to relief under the claims asserted. *Id.* at 695–96.

The Montana Supreme Court affirmed on appeal. In so holding, the court stated that a private MCPA claim requires proof that the defendant's practice

caused the consumer to suffer an ascertainable loss. *Id*. at 700. The court pointed out that the plaintiffs' complaint did not allege any facts to show that Bank of American induced plaintiffs to enter into any transaction. *Id.* at 699. Thus, the court found the complaint was "devoid of any factual assertion that, but for their reliance on Bank of America's initial alleged misrepresentation regarding their loan modification eligibility, Andersons would have timely cured their default and avoided foreclosure." *Id.* at 700.

The Montana Supreme Court did not reference this Court's decision in *PNC Bank*, nor did it discuss whether a MCPA claim is subject to the heightened pleading requirements applicable to claims of fraud. The court's decision made clear, however, that detrimental reliance and causation are essential elements of a MCPA claim. *See also In re ZF-TRW Airbag Control Units Prod. Liab. Litig.*, 601 F. Supp. 3d 625, 787–88 (C.D. Cal. 2022) (pointing out the conflict between *PNC Bank* and *Anderson*, and recognizing that *Anderson* controls this issue of Montana law).

As in *Anderson*, the FAC in this case does not allege any facts from which it may be inferred that Guthridge relied on any representation made by the Defendants or that any representation caused her loss. Thus, the Court recommends Defendants' motion also be granted with respect to Count III.

/ / /

### D.     Leave to Amend

Guthridge asks the Court to grant her leave to amend the FAC should it determine dismissal of Count III or IV is appropriate.  (Doc. 24 at 15.)  Leave to amend should be granted unless "the pleading could not possibly be cured by the allegation of other facts."  *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)).  Guthridge has not pled sufficient facts to establish her MCPA and fraud claims.  Nevertheless, Guthridge can cure this deficiency if she is able to plead the Defendants' alleged fraudulent misrepresentations and her reliance on them.  Accordingly, Counts III and IV of the FAC should be dismissed without prejudice, and with leave to amend.

## IV.    Conclusion

Based on the foregoing, **IT IS HEREBY RECOMMENDED** that Defendants' Motion to Dismiss (Doc. 22) be **GRANTED**, without prejudice and with leave to amend, with respect to Counts III and IV of the FAC.

**NOW, THEREFORE, IT IS ORDERED** that the Clerk shall serve a copy of the Findings and Recommendations of United States Magistrate Judge upon the parties.  The parties are advised that pursuant to 28 U.S.C. § 636, any objections to

/ / /

/ / /

the findings and recommendations must be filed with the Clerk of Court and copies served on opposing counsel within fourteen (14) days after service hereof, or objection is waived.  D. Mont. L.R. 72.3.

    DATED this 22nd day of September, 2023.

                                                          _____
                                                          TIMOTHY J. CAVAN
                                                          United States Magistrate Judge